FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 03 2017

JAMES W. McCORMACK, CLERK
By: _____ DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

BOBBIE MCCOY                                                                    PLAINTIFF

vs.                                     CASE NO. 4:17cv2-KGB

JULIÁN CASTRO, In His
Official Capacity as SECRETARY,
OF THE UNITED STATES DEPARTMENT
OF HOUSING and URBAN DEVELOPMENT,                                DEFENDANT

COMPLAINT

This case assigned to District Judge Baker
and to Magistrate Judge Harris

Introduction

This is a civil rights action brought pursuant to 42 U.S.C.S. § 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), 42 U.S.C.S. § 12101 (American with Disabilities Act), in order to recover damages against the defendant for the unlawful discriminatory employment practices that the plaintiff, **Bobbie McCoy**, has been subjected to, all on account of his race (African-American), handicapping condition, and in retaliation for opposing unlawful discriminatory employment practices. This is also an action for declaratory judgment pursuant to 28 U.S.C. § 2201 to declare the rights and other legal relations between the parties. The plaintiff is also seeking equitable relief and injunctive relief as well.

I.

Jurisdiction

1.       Jurisdiction and venue of this Court are invoked pursuant to 28 U.S.C. §§ 1331, 1343, 1391, 42 U.S.C. §§ 2000e *et seq.* (Title VII of the Civil Rights Act of 1964, as amended), and 29 C.F.R. § 1614.110, 42 U.S.C.S. § 1981, 42 U.S.C.S. § 12101 (Americans with Disabilities Act).

1

2. The unlawful employment practices alleged to have been committed against the plaintiff were committed in the State of Arkansas, and in Pulaski County, Arkansas.

II.

Parties

3. The plaintiff is an African-American male, and is a resident of the United States of America.

4. The defendant Julián Castro, is the Secretary of the United States Department of Housing and Urban Development, and is being sued in his official capacity.

5. The defendant Julián Castro, as the Secretary of Housing and Urban Development, is an employer within the meaning of 42 U.S.C. § 2000e (b), (g), and (h).

III.

Facts

6. The plaintiff Bobbie McCoy, is a licensed attorney for the State of Arkansas, and is seventy-one (71) years old.

7. The plaintiff served in the United States Air Force.

8. The plaintiff started his career with the Department of Housing and Urban Development in approximately 1995.

9. At the time that this cause of action arose, the plaintiff was employed by the Department of Housing and Urban Development (HUD) as an Operations Specialist, GS-15 in the Little Rock Field Office.

10. During the relevant time period, the plaintiff was supervised by Bernice Jackson, who is an African-American female.

11. Ms. Jackson served as the Little Rock Field Office Director.

12. Beginning in late 2005, the plaintiff begin to experience pain and tremors in his right arm and hand, as well as pain and numbness in his left hand.

13. In August 2006, the left armrest of the plaintiff's desk chair broke, and he requested to be provided with an ergonomic chair, which he was denied.

14. On or about April 24, 2003, the plaintiff had made a request for an ergonomic chair, and an adjustable keyboard, to provide "much needed relief," to his physical problems that he was experiencing during that time period, but this request was denied.

15. Although Ms. Jackson was aware of Mr. McCoy's physical ailments, in particular his hands, often commenting about how they would swell, Ms. Jackson kept assigning the plaintiff work, which required extensive typing.

16. On March 21, 2007, complainant submitted an "Accommodation Request," form HUD-1000, stating:

> My Doctor has instructed me to "limit" my time and usage on the computer for the next 30 days (days) through April 12, 2007 because of pain and tremors in my hands, particularly the right hand. They have gotten progressively worse over the past 18 months. A treatment plan is expected on 4-13-07.

17. On April 5, 2007, the plaintiff was seen by Michael Chesser, M.D., for the problems that he was having, in particular his arms and his hands; the plaintiff was experiencing tingling and numbness in his hands and arms.

18. On April 26, 2007, the plaintiff was diagnosed with entrapment of the ulnar nerve at the left elbow and with cubital tunnel syndrome, by S. Berry Thompson, M. D..

19. The plaintiff was also seen by his physician Dr. Chesser for a return visit on May 11,

2007.

20.  The condition that the plaintiff was diagnosed with, caused pain and tingling in the left hand and elbow.

21.  The plaintiff was also diagnosed with Dystonia (writer's cramp) of the right hand.

22.  Dr. Chesser, in consultation with Dr. Thompson, made a recommendation that the plaintiff be provided a workstation evaluation by an occupational therapist to see if anything could be done that will alleviate the pain that the plaintiff was experiencing.

23.  On May 9, 2007, Sylvia I. Cohen, M. D., who is employed by the Department of Health and Human Services-Federal Occupational Health Services, as an Occupational Medicine Consultant, sent a letter to Deborah Rizzo, who served as the Director of EAP & Disability Program Manage, regarding the plaintiff's medical condition.

24.  Dr. Cohen indicated that she had reviewed the medical records of the plaintiff, and had spoken with Drs. Thomas Cain and Michael Z. Chesser, and made a recommendation that the plaintiff be provided with voice recognition software.

25.  After receiving the new keyboard and mouse, the plaintiff wrote a letter to Ms. Rizzo, on May 14, 2007, requesting that a workstation evaluation be conducted, because the new keyboard and mouse may be doing more harm than good.

26.  The plaintiff also reminded Ms. Rizzo in his May 14, 2007 letter, that he had made a request back in April 2003 to have his workstation evaluated, and that had that been done, the damage to his hands could have been minimized.

27.  On June 11, 2007, complainant submitted an "Accommodation Request," form HUD-1000, stating:

> My daily use of the computer has been restricted further as outlined in the attached "Work Status Report" to not more than two and one half hours (2 ½) per day. Since my workstation has not been evaluated, to date, as requested, the Doctors cannot fully evaluate and treat my condition.

28. On June 18, 2007, the plaintiff submitted a complaint to the Occupational & Safety & Health Administration (OSHA) regarding the problems that he had been having in getting his reasonable accommodations requests met. The plaintiff stated that on May 14, 2007, he submitted a request to Deborah Rizzo, requesting that his workstation be evaluated, and that he followed up with those requests in writing and verbally, but to no avail.

29. In response to the plaintiff's complaint to OSHA, a letter was sent on June 18, 2007 to the Agency by Paul Hansen. In Mr. Hansen's letter, he instructed the Agency to investigate the alleged complaints of the plaintiff, and to report back to OSHA no later than June 26, 2007, detailing the results of their investigation.

30. On September 28, 2007, the Federal Occupational Health issued an Ergonomic Assessment Report recommending that another job be found for the plaintiff that required no typing or handwriting, that he use the Dragon software, a Roller Mouse, and the modern chair that was already in the cubicle and that the agency eliminate the keyboard tray and place the keyboard on the desk.

31. On October 4, 2007, Ms. Rizzo wrote a memorandum summarizing information received from the ergonomic evaluation along with the status of equipment/supply requisitions as recommended by the evaluator.

32. On or about October 12, 2007, plaintiff's performance for the period September 1, 2006 to September 30, 2007, was rated "Fully Successful."

5

33. On October 31, 2007, Ms. Jackson instructed the plaintiff to update the contact information for the office's Congressional notebook, which required a great deal of typing, which further aggravated the pain that the plaintiff was experiencing.

34. On November 6th and 7th, 2007, plaintiff received live training on the use of the Dragon software, under the threat of disciplinary action by Bessie Jackson.

35. The training further aggravated the injury to the plaintiff's hands, particularly his right hand.

36. Bessie Jackson continued to provide the plaintiff with assignments that had short deadlines, and that required extensive typing, which violated the plaintiff's doctor's orders.

37. On Friday, November 16, 2007, the plaintiff emailed his supervisor stating that his doctor had directed "no keyboard work until further notice."

38. Ms. Jackson adjusted complainant's work assignments by allowing complainant to dictate the weekly report to a Legal Assistant, instructing him to finish filing the correspondence and other documents on his desk, and assigning him to work at the Customer Service Desk.

39. On November 25, 2007, Ms. Jackson emailed complainant asking about the status of the update to the Congressional notebook, which had been assigned on October 31.

40. Despite the fact that Ms. Jackson knew that Dr. Chesser had requested that the plaintiff not be required to use the keyboard, Ms. Jackson still requested that the plaintiff complete the Congressional Notebook, which required extensive typing.

41. The work assignments that Ms. Jackson imposed, as well as the "use of 'short cuts training for Microsoft Windows applications," were done for the purpose of aggravating the plaintiff's injury.

42. On Sunday, November 25, 2007, at 10:30 p.m., Ms. Jackson sent the plaintiff an e-mail regarding the Congressional Notebook, telling him that it had to be completed by December 7, 2007.

43. Although the plaintiff requested that he be provided with a copy of the Congressional Notebook in electronic form, he was not provided with such, which would have eliminated a lot of typing.

44. The plaintiff was forced to prepare the Congressional Notebook in Microsoft Word, which consisted of thirty-three (33) pages.

45. On December 4, 2007, the plaintiff was examined by Dr. S. Barry Thompson, an Orthopedic Surgeon, who advised the plaintiff that surgery was immediately necessary, due to the extent of his injury.

46. Dr. Thompson scheduled the plaintiff for surgery on January 18, 2008, and indicated that the plaintiff needed to be off for two (2) weeks.

47. Dr. Thompson also instructed the plaintiff not to perform any typing or work with the keyboard and mouse.

48. Despite these instructions, on January 9, 2008, Bessie Jackson advised the plaintiff that he was still expected to complete his work assignments as ordered, which included, but was not limited to the following: a) Quarterly Management Report - no later than 2:30 p.m. on January 16, 2008, b) Weekly Report, due on January 11, 2008, c) FBM Employee Work Plan due on January 11, 2008, and other assignments. Ms. Jackson warned the plaintiff that if he did not complete these tasks, he would be disciplined.

49. The Complainant advised Ms. Jackson that he had not become proficient in the use

of the Dragon voice recognition software, and that the configuration of his new office cubicle, made it difficult to use (due to the noise level of co-workers), that he could not complete the assignments using the new software.

50. In that the Complainant had not become proficient in the use of the voice recognition software, and had to type his assignments, which would have been inconsistent with his doctors' advice, he decided to take off on sick leave, to avoid being disciplined.

51. On November 9, 2007, plaintiff sought EEO counseling and on February 26, 2008, he filed an EEO Complaint of Discrimination.

52. By letter dated May 5, 2008, the Agency accepted plaintiff's claims of discrimination and hostile work environment.

53. On May 29, 2008, complainant filed a third "Accommodation Request," form HUD-1000, stating:

> An evaluation of my work station was ordered because of surgery on my elbows & treatment for dystonia in my right hand. The evaluation was approved by Workers' Comp - DOL. I request reasonable accommodation as outlined in the attached "Job Site Evaluation", Northside Therapy Center, 5-13-08.

54. Finally, in March 2009, the plaintiff was provided with his first ergonomic chair.

### IV.
### Count I
### Violation of the Americans with Disabilities Act

55. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 54, *supra.*, inclusive as though set forth herein word for word.

56. The plaintiff was disabled within the meaning of the term as defined by the Americans with Disabilities Act.

57. Furthermore, the plaintiff was subject to disparate terms and conditions of his employment contract with the defendant, due to his perceived disability and his actual disability, in violation of the Americans with Disabilities Act.

58. Furthermore, the defendant refused to make reasonable accommodations for the plaintiff's disability, by forcing him to perform typing and keyboarding that it knew would conflict with the plaintiff's health condition and in violation of his doctor's recommendations, in direct violation of the Americans with Disabilities Act.

59. Furthermore, the defendant delayed for an unreasonable amount of time in providing the plaintiff with the necessary equipment in order to perform his job duties, despite being requested to do so by the plaintiff's and his medical doctors, as well as the occupational therapist, in violation of the Americans with Disabilities Act.

V.
Count III
Race Discrimination

60. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 59, *supra.*, inclusive as though set forth herein word for word.

61. Steve Coop is a Caucasian co-worker of the plaintiff, who also suffered from a disability.

62. Ms. Jackson supervises three (3) employees, two (2) Caucasian employees, and the plaintiff, who is African-American.

63. Mr. Coop requested, and was immediately provided with an expensive ergonomic chair, due to his disability.

64. Furthermore, Mr. Coop was not required to perform any extensive typing or keyboard,

as an accommodation to his physical limitations.

65. Despite the fact that the plaintiff made similar requests, as Mr. Coop to be relieved of typing, and to be provided with an ergonomic chair, the plaintiff's requests were not met, and/or they were unreasonably delayed, on account of his race, in violation of Title VII of the Civil Rights Act of 1964 (as amended).

66. The plaintiff was provided with less favorable terms and conditions of his employment on account of his race (black), as was Mr. Coop, in violation of Title VII of the Civil Rights Act of 1964 (as amended).

## VI.
## Count IV
## Retaliation

67. The plaintiff re-alleges and incorporates by reference each and every allegation contained in paragraphs 1 through 66, *supra.*, inclusive as though set forth herein word for word.

68. However, On June 18, 2007, the plaintiff submitted a complaint to the Occupational & Safety & Health Administration (OSHA) regarding the problems that he had been having in getting his reasonable accommodations requests met.

69. In response to the plaintiff's complaint to OSHA, a letter was sent on June 18, 2007 to the Agency by Paul Hansen. In Mr. Hansen's letter, he instructed the Agency to investigate the alleged complaints of the Complainant, and to report back to OSHA no later than June 26, 2007, detailing the results of their investigation.

70. On or about October 12, 2007, the plaintiff was issued a performance appraisal of "fully successful," when in times past, he had received higher performance appraisals.

71. Furthermore, the plaintiff was provided training under the threat of disciplinary action

by Bessie Jackson.

72. This training further aggravated the plaintiff's medical condition.

73. On November 9, 2007, the plaintiff consulted with an EEO Counselor, about the discriminatory treatment that he was being subjected to.

74. Bessie Jackson continued to provide the plaintiff with extensive typing, with short deadlines, which violated the plaintiff's doctor's orders.

75. On November 25, 2007, the plaintiff was issued a directive to have the Congressional Notebook completed by December 7, 2007, which required a great deal of typing.

76. The plaintiff's complaint of discrimination and hostile work environment was accepted by the agency on or about May 5, 2008.

77. The plaintiff was issued a proposed five (5) day suspension sometime in November 2007, after complaining to OSHA and to the EEO about discriminatory treatment.

78. The above mentioned acts of retaliation were issued to the plaintiff as a direct result of the plaintiff complaining about discrimination to the EEO and to OSHA, and were designed to punish the plaintiff for having complained, all in violation of Title VII of the Civil Rights Act of 1964 (as amended).

79. On October 6, 2016, the agency issued its Final Agency Decision pursuant to 29 C.F.R. § 1614.110(b), advising the plaintiff that he had ninety (90) days to file her lawsuit in federal district court.  (**See Copy of Excerpts of Final Agency Decision Attached herein as Plaintiff's Exhibit "A"**).

80. As a proximate cause of being subjected to unlawful employment practices, the plaintiff has suffered mental anguish and humiliation, all to his damage in an amount to be proven

at trial.

81. Also, as a proximate cause of being subjected to unlawful employment practices, the plaintiff has experienced loss of income, and should be awarded back pay in an amount to be proven at trial.

82. This lawsuit is being filed within the requisite 90 days of plaintiff's receipt of the "Final Agency Decision and Order," which was issued on October 6, 2016.

### Jury Demand

83. The plaintiff requests that this matter be submitted to a fair and impartial jury of twelve (12) persons.

THEREFORE, the plaintiff is seeking the following relief for the above described unlawful employment practices:

a. declare that the plaintiff has been subjected to unlawful discriminatory practices;

b. reinstatement and back pay;

c. compensatory and punitive damages;

d. the costs of prosecuting this action;

e. attorneys fees;

f. and for all other equitable, legal, and just relief.

Respectfully submitted,

PORTER LAW FIRM
The Tower Building
323 Center Street, Suite 1035

          Little Rock, Arkansas 72201  
          Telephone: 501-244-8200  
          Facsimile: 501-372-5567  
          E-mail: Aporte5640@aol.com  

By: _____  
     Austin Porter Jr., No. 86145

Dated this 3rd January 2017.



U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT
WASHINGTON, DC 20410-0001

OCT 6 2016

OFFICE OF DEPARTMENTAL
EQUAL EMPLOYMENT OPPORTUNITY

Bobby McCoy
2417 Marshall Street
Little Rock, AR  72206

**SUBJECT:** **Final Order** in <u>Bobbie McCoy v. Julián Castro</u>, Secretary,
U.S. Department of Housing and Urban Development,
Case Numbers HUD-00020-2008
EEOC Docket Number 490-2010-00055X



PLAINTIFF'S
EXHIBIT
A

Dear Mr. McCoy:

After review of the U.S. Equal Employment Opportunity Commission (EEOC) Administrative Judge Joseph M. Crout's decision dated September 28, 2016 and received on October 4, 2016, the U.S. Department of Housing and Urban Development is taking final action on the subject Equal Employment Opportunity (EEO) complaint by issuing this Final Order.

Therefore, the U.S. Department of Housing and Urban Development hereby adopts the decision rendered by EEOC Administrative Judge Crout with a finding of no discrimination and will take no further corrective action.

You may appeal this Final Order pursuant to the following appeal rights:

1. You may file an appeal with the U.S. Equal Employment Opportunity Commission (EEOC) within (30) calendar days of receipt of the Agency's Final Order. You may file an appeal whether the Agency decides to fully implement the Administrative Judge's Decision or not. Your appeal should be filed with the EEOC, Office of Federal Operations, P. O. Box 77960, Washington, DC 20013. The 30-day period for filing an appeal begins on the date of your receipt of this Final Order. An appeal shall be deemed timely if it is delivered in person, transmitted by facsimile or postmarked before the expiration of the filing period, or in the absence of a legible postmark, the appeal is received by mail within 5 days after the expiration of the filing period. You may fax your appeal to the Commission at (202) 663-7022 if the facsimile transmission is ten pages or less. You must serve a copy of the Notice of Appeal/Petition, EEOC Form 573, to the Department Director, Office of Departmental Equal Employment Opportunity, U.S. Department of Housing and Urban Development, 451 7th Street, SW, Room 2102, Washington, DC 20410, at the same time that you file it with the Commission. A copy of Form 573 has been provided for your convenience. In or attached to the appeal to the Commission, you must certify the date and method by which service was made to the Agency. A copy of the Administrative Judge's Decision and the Agency's Final Order must also be attached to the Notice of Appeal/Petition Form 573. Failure to file your appeal within the thirty (30) day period could result in the dismissal of the appeal by the EEOC, unless you explain, in writing, the extenuating circumstances that prevented your filing within the prescribed time limit. In that event, extending the time limit and accepting the appeal will be discretionary with the EEOC.

2. You may file a brief or statement in support of your appeal with the Office of Federal Operations. Your brief or statement must be filed within thirty (30) calendar days from the date that the appeal is filed. You must serve a copy of the brief or statement in support of your appeal to the Department Director, Office of Departmental Equal Employment Opportunity, U.S. Department of Housing and Urban Development, 451 7th Street, SW, Room 2102, Washington, DC 20410, at the same time that you file it with the Commission.

3. You may file a civil action in an appropriate United States District Court within ninety (90) calendar days of your receipt of the Order. If you choose to file a civil action, that action should be captioned: <u>Bobby McCoy v. Julián Castro</u>, Secretary, U.S. Department of Housing and Urban Development. You may also request the court to appoint an attorney for you and to authorize the commencement of that action without the payment of fees, costs, or security in such circumstances as the court deems just. Your application must be filed within the same ninety (90) day period for filing the civil action.

Sincerely,

*[signature]*
for John P. Benison, Director
Office of Departmental Equal Employment Opportunity

Enclosures:
EEOC Decision
EEOC Form 573 – Notice of Appeal/Petition

cc:
Nelson Bregon, M

Austin Porter, Jr., Esq.
323 Center Street
Suite 1300, Tower Building
Little Rock, AR 72201

Administrative Judge Joseph M. Crout
U.S. Equal Employment Opportunity Commission
Memphis District Office
1407 Union Avenue
Suite 901
Memphis, TN 38104

2